# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 10 2019, 10:33 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

Kristen E. Phair
Special Assistant to the State Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Justin F. Roebel
Supervising Deputy Attorney General
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Damian Justin Harris, <br> *Appellant-Petitioner,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Respondent.* | July 10, 2019 <br><br> Court of Appeals Case No. <br> 18A-PC-1835 <br><br> Appeal from the Allen Superior Court <br><br> The Honorable Frances C. Gull, Judge <br><br> Trial Court Cause No. <br> 02D05-1303-PC-82 |

**Barnes, Senior Judge.**

# Statement of the Case

[1] Damian Harris appeals the denial of his petition for post-conviction relief, in which he had claimed his trial counsel had failed to present crucial mitigating evidence at sentencing. We affirm.

# Issue

[2] Harris raises one issue, which we restate as: whether the post-conviction court erred in rejecting his claim of ineffective assistance of trial counsel.

# Facts and Procedural History

[3] The facts of the case, as stated in Harris' first appeal, are as follows:

> [On February 21, 2000,] [w]hen Harris was just fifteen years old, he attempted to rob a locally owned market. He failed in his endeavor to obtain money; however, as Harris was exiting the market, he entered into a struggle with the owner of the market, whom Harris shot and killed. The State filed a delinquency petition based upon Harris' acts that, if committed by an adult, would be the offenses of murder, felony murder, and attempted robbery. The State later filed a motion for waiver of juvenile jurisdiction, which the juvenile court granted. Following a jury trial in adult criminal court, Harris was found guilty of felony murder and attempted robbery.

*Harris v. State*, 824 N.E.2d 432, 436 (Ind. Ct. App. 2005) ("*Harris 1*").

[4] At sentencing, Harris, through his attorneys, presented testimony from his mother, his sister, a school official who knew Harris, and an official from the youth center where Harris had been detained while his case was pending. The

witnesses discussed positive aspects of Harris' character. Harris also offered as exhibits his school records and an evaluation that was generated during juvenile waiver proceedings. The sentencing court accepted the exhibits into evidence. Harris' counsel urged the trial court to find that Harris' lack of a criminal record and young age were mitigating factors and impose the minimum sentence of forty-five years.

[5] The court agreed that Harris' lack of a criminal history and young age were mitigating factors. The court further concluded those factors were outweighed by the nature and circumstances of the offense, the impact on the victim's family and the community, and the victim's age. As a result, the court vacated the attempted robbery conviction but sentenced Harris to sixty-five years for murder, the maximum possible sentence.

[6] On appeal, a panel of this Court affirmed Harris' conviction but determined the trial court had: (1) erroneously cited an improper aggravating circumstance (impact on the victim's family and the community); and (2) erroneously enhanced Harris' sentence by citing aggravating factors that had not been submitted to the jury or admitted by Harris, in violation of the holding in *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). *Harris 1*, 824 N.E.2d at 442. The Court remanded for resentencing.

[7] On remand, the trial court held another sentencing hearing. Harris was represented by one of the two attorneys who had represented him at the original sentencing hearing. The court again identified Harris' age and lack of criminal

history as mitigating factors but determined they were outweighed by the victim's age. The court assigned low mitigating weight to Harris' age, telling Harris he was "[c]learly old enough to know better, clearly old enough to conform your conduct to the requirements of the law, and clearly old enough to appreciate right and wrong." Resentencing Tr. p. 45. The court also stated it appeared Harris had planned the robbery in advance. The court imposed a sentence of sixty-five years, the same as before.

[8] Harris appealed, arguing: (1) the trial court abused its discretion in identifying aggravating and mitigating circumstances; and (2) his sentence was inappropriate pursuant to Indiana Appellate Rule 7(B). A panel of this court affirmed Harris' sentence in a Memorandum Decision. *Harris v. State*, Cause No. 02A03-0509-CR-446 (Ind. Ct. App. May 16, 2006) ("*Harris 2*").

[9] Harris filed a petition for post-conviction relief in 2013 and amended it in 2017. The post-conviction court held an evidentiary hearing on September 8, 2017. Among other evidence, Harris presented testimony from his trial attorneys and from Dr. Robin Kohli, a psychologist who had evaluated Harris on January 1, 2017. Next, the parties filed proposed findings of fact and conclusions thereon.

[10] On July 5, 2018, the court issued findings of fact, conclusions thereon, and a judgment. The court determined Harris was entitled to additional jail credit time but otherwise denied Harris' petition. As for Harris' claim of ineffective assistance of trial counsel, the court concluded he did not "suffer prejudice" from his attorney's alleged failure to present certain mitigating evidence during

sentencing. Appellant's App. Vol. II, p. 188. The court explained Harris had failed to "establish a reasonable probability that [Harris] would have received a sentence less than the maximum even if all the mitigating evidence presented in this post-conviction proceeding had been presented at sentencing." *Id.* This appeal followed.

# Discussion and Decision

## I. Standard of Review

[11] The post-conviction process is not an opportunity for a "'super-appeal.'" *McCary v. State*, 761 N.E.2d 389, 391 (Ind. 2002) (quoting *Ben-Yisrayl v. State*, 729 N.E.2d 102, 105 (Ind. 2000)). Indiana Post-Conviction Rule 1(a) sets forth specific circumstances under which a petitioner may collaterally attack a conviction or sentence, such as by claiming that the conviction or sentence violates a federal or state constitutional right.

[12] A petitioner who has been denied post-conviction relief appeals from a negative judgment and must convince the appellate court that the evidence, as a whole, leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court. *McCary*, 761 N.E.2d at 391. When reviewing a denial of post-conviction relief, we give no deference to the post-conviction court's legal conclusions, but to the extent the decision turns on factual determinations, our review is deferential, and will result in reversal only when the decision is found to be clearly erroneous. *Boesch v. State*, 778 N.E.2d 1276, 1280-81 (Ind. 2002).

[13] Harris argues this Court should give the post-conviction court's findings and conclusions less deference because the court entirely adopted the State's proposed findings and conclusions as its own. We disagree. Harris also concedes the court made grammatical changes throughout the State's proposed findings and conclusions. We conclude the court carefully considered the individual findings proposed by the State. *See Stevens v. State*, 770 N.E.2d 739, 762 (Ind. 2002) (rejecting petitioner's claim that he was denied unbiased adjudication of post-conviction claims; post-conviction court largely adopted State's proposed findings but implemented several edits and corrections).

[14] In addition, Harris notes that in one instance, the post-conviction court's findings and conclusions misstated Harris' age as sixteen at the time of the murder. The court also correctly identified Harris' age as fifteen elsewhere in the findings and conclusions, and any error in that regard is harmless.

## 2. Effectiveness of Trial Counsel

[15] Harris argues his trial counsel should have presented evidence at sentencing and/or resentencing discussing scientific information on adolescent brain development, which he claims would have demonstrated that his capacity for foresight, strategic thinking, and impulse control were less than that of an adult. He further claims counsel should have discovered and presented evidence that he: (1) had a traumatic childhood, including being beaten by his mother and sexually abused by his older brothers, and being exposed to his mother's violent behavior against his father and others; and (2) was impaired at the time of the murder due to mental illness, including conduct disorder, cannabis dependence,

and post-traumatic stress disorder resulting from physical and sexual abuse. Harris concludes that if the sentencing court had seen this evidence, it would have concluded he was not "a callous felon" but rather "a compromised child" and would have imposed a shorter sentence. Appellant's Br. p. 15.

[16] The Sixth Amendment guarantees criminal defendants a right to the assistance of counsel. The right to counsel includes a right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 2063, 80 L. Ed. 2d 674 (1984) (quotation omitted). When evaluating a claim of ineffective assistance of counsel, we apply the two-part test that was first set forth in *Strickland*. First, a petitioner must show that counsel's performance was deficient. *Passwater v. State*, 989 N.E.2d 766, 770 (Ind. 2013). Second, a defendant must show that the deficient performance prejudiced the defense. *Id.* To establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* The two parts of the *Strickland* test are separate and independent inquiries. *Thacker v. State*, 715 N.E.2d 1281, 1284 (Ind. Ct. App. 1999), *trans. denied*. If it would be easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed. *Massey v. State*, 955 N.E.2d 247, 258 (Ind. Ct. App. 2011).

[17] The judge who presided over Harris' original trial and sentencing, as well as the resentencing hearing, also presided over the post-conviction evidentiary hearing. Under these circumstances, we afford the post-conviction court's findings and judgment "greater than usual deference." *McCullough v. State*, 973

N.E.2d 62, 75 (Ind. Ct. App. 2012), *trans. denied*. We provide such deference because the judge is "uniquely situated" to address whether trial counsel's performance failed to meet the *Strickland* standard. *Hinesley v. State*, 999 N.E.2d 975, 982 (Ind. Ct. App. 2013), *trans. denied*.

[18] We now turn to the standards governing mitigating evidence at sentencing. In determining an appropriate sentence, all circumstances of the particular crime and the background of the individual offender should be considered. *Thomas v. State*, 562 N.E.2d 43, 47 (Ind. Ct. App. 1990). This individualized sentencing process requires possession of the fullest information possible concerning the defendant's life and characteristics. *Id.* In addition:

> The finding of mitigating factors is not mandatory and rests within the discretion of the trial court, and the trial court is not required to accept the defendant's arguments as to what constitutes a mitigating factor. Further, the trial court is not required to give the same weight to proffered mitigating factors as the defendant does, nor is it obligated to explain why it did not find a factor to be significantly mitigating.

*Williams v. State*, 997 N.E.2d 1154, 1163-64 (Ind. Ct. App. 2013) (citations omitted). When a post-conviction petitioner claims that counsel should have presented certain mitigating evidence, we must determine "what effect the totality of the omitted mitigation evidence would have had on [the defendant's] sentence." *Coleman v. State*, 741 N.E.2d 697, 702 (Ind. 2000).

[19] This appeal can be resolved on the prejudice element of the *Strickland* test. In *Lewis v. State*, 116 N.E.3d 1144 (Ind. Ct. App. 2018), *trans. denied*, eighteen-year-

old Lewis participated in the robbery and murder of two people, and a jury determined he was guilty of two counts of robbery and two counts of felony murder. His counsel declined to present any mitigating circumstances at sentencing, and the court imposed maximum, consecutive sentences of sixty-five years for each count of felony murder. On direct appeal, Lewis' counsel declined to challenge the sentence under Indiana Appellate Rule 7(B), determining the record was too inadequate to raise that claim.

[20] Lewis later filed a petition for post-conviction relief, alleging his trial counsel should have argued that his young age, difficult childhood, and poor mental health were mitigating factors. The post-conviction court denied Lewis' petition, and he appealed. A panel of this Court determined Lewis' trial counsel performed deficiently, concluding the attorney "certainly should have proffered the mitigators at sentencing." *Id.* at 1157. Regardless, the Court affirmed the post-conviction court's judgment, concluding Lewis had failed to demonstrate a reasonable probability that he was prejudiced by his attorney's poor performance. The Court explained: (1) the record failed to demonstrate that Lewis was naïve or clueless despite his young age; (2) difficult childhoods generally do not warrant mitigating weight; and (3) there did not appear to be a nexus between Lewis' mental illness and the crimes.

[21] As in *Lewis*, we conclude that Harris was not prejudiced by trial counsel's failure to present evidence related to the three mitigating factors discussed above. Starting with Harris' abusive childhood, we agree with the *Lewis* court that evidence of a difficult childhood is not generally entitled to much

mitigating weight. 116 N.E.3d at 1155 (quotation omitted). Further, Harris' primary source of evidence regarding his abusive childhood was Dr. Kohli's 2017 report, wherein Harris and one of his brothers described being subjected to sexual abuse by their older brothers and being beaten by their mother. Harris further described seeing his mother attack his father and others with a knife.

[22] Dr. Kohli conceded on cross-examination that he had not interviewed Harris' mother or sister because Harris' post-conviction counsel had not asked him to contact them. Harris' mother had "vehemently" denied to Harris' trial counsel that Harris had been molested. PCR Tr. Vol. 2, p. 40. Further, Harris' sister had testified at trial that their mother "was a good mother" and that Harris was "taught very well" growing up. Sentencing Tr. p. 41. The post-conviction court concluded Dr. Kohli's report was of "dubious value" due to its exclusion of possibly unfavorable information, Appellant's App. Vol. II, p. 185, and would not have had much mitigating value at sentencing or resentencing. The evidence supports the court's determination.

[23] Next, we turn to Harris' second proposed mitigator: his claimed mental illnesses. When considering what, if any, mitigating weight to give to evidence of a defendant's mental illness, the sentencing court should consider, among other factors: (1) the extent of the defendant's inability to control his or her behavior due to the disorder or impairment; (2) overall limitations on functioning; (3) the duration of the mental illness; and (4) the extent of any nexus between the disorder or impairment and the commission of the crime. *Krempetz v. State*, 872 N.E.2d 605, 615 (Ind. 2007).

[24] In 2017, Dr. Kohli diagnosed Harris as having experienced several forms of mental illness at the time of the murder in 2000, including post-traumatic stress disorder, conduct disorder, and cannabis disorder. The post-conviction court determined that if evidence of Harris' claimed mental illnesses had been presented at sentencing or resentencing, it would not have made a difference because those conditions did not compel him "to decide to commit the potentially dangerous act of armed robbery," which led to the murder. Appellant's App. Vol. II, p. 185. The court determined Harris was not so mentally impaired that it would have been impossible for him to refrain from knowingly or intentionally killing another person. The court thus concluded Harris' claimed mental illnesses would have been given little, if any mitigating weight. Viewing the evidence in the light most favorable to the judgment, we agree. *See Greer v. State*, 749 N.E.2d 545, 551 (Ind. 2001) (affirming trial court's decision to give little mitigating weight to defendant's PTSD diagnosis; defendant shot a store employee during a robbery, and there was no evidence defendant ultimately lacked the ability to distinguish right from wrong).

[25] Finally, as for the third proposed mitigator, general evidence about adolescent brain development, Harris points out that the United States Supreme Court stated in *Roper v. Simmons*, 543 U.S. 551, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005), that psychological and sociological studies have established that juveniles tend to have diminished mental capacity in the form of an underdeveloped sense of responsibility, vulnerability to outside pressures, and a transitory sense of personality.

[26]     The Supreme Court issued *Roper* six months before Harris' resentencing hearing, and Harris' lead trial counsel was aware of that decision at resentencing. Even so, if counsel had presented general information about adolescent brain function at Harris' resentencing, we agree with the post-conviction court that it would not have affected the sentencing outcome. *Roper* discussed adolescent brain function in the context of the death penalty, which was not at issue in Harris' case. There is also no evidence that juvenile immaturity played a role in Harris' decision to commit murder. Harris' expert witness, Dr. Robin Kohli, conceded different adolescents may develop at different rates, and many juveniles with impulsivity issues and abusive childhoods go on to become "model citizens" instead of committing grievous criminal offenses. PCR Tr. Vol. 2, p. 123.

[27]     Harris further claims that, if none of the three mitigating circumstances standing alone establishes a reasonable probability that his sentence would have been different if they had been presented at sentencing or resentencing, then the three factors, taken together, do meet that standard. It is well established that errors by counsel that are not individually sufficient to prove ineffective representation may add up to ineffective assistance when viewed cumulatively. *Pennycuff v. State*, 745 N.E.2d 804, 816-17 (Ind. 2001).

[28]     As the trial court noted at sentencing and resentencing, Harris murdered a person who was over sixty-five years of age. Further, the failed robbery was not a spur of the moment event; Harris planned it in advance. Against those factors, the trial court accepted Harris' relatively young age and his lack of a

criminal record as mitigating factors but gave them low weight. If the trial court had received evidence at sentencing or resentencing as to Harris' difficult childhood and alleged mental illnesses, plus general information about adolescent brain development, we cannot conclude there is a reasonable possibility that those factors, in the aggregate, would have affected the sentencing outcome. The trial court, which carefully considered Harris' sentence twice, emphasized that Harris was old enough to know right from wrong, and none of the additional evidence would have established that Harris was incapable of understanding that murder is wrong or preventing himself from committing that offense. In summary, we agree with the post-conviction court that there is not a reasonable possibility that the court would have imposed a lesser sentence had it been informed of evidence related to the three mitigating factors cited by Harris. *See French v. State*, 778 N.E.2d 816, 826-27 (Ind. 2002) (attorney's alleged errors, viewed cumulatively did not amount to prejudice to defendant; evidence was such that alleged errors would not have changed outcome).

[29] Harris argues in the alternative that if his trial counsel had placed the previously unrevealed evidence into the record during resentencing, then the *Harris 2* court would have found his sixty-five-year sentence inappropriate pursuant to Indiana Appellate Rule 7(B) and ordered the trial court to reduce it. Indiana's appellate courts may revise a sentence authorized by statute if, "after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." *Id.* The

principle role of such review is the attempt to leaven the outliers. *Abd v. State*, 120 N.E.3d 1126, 1137 (Ind. Ct. App. 2019) (quotation omitted), *trans. denied*. The defendant bears the burden to persuade the reviewing court that the sentence imposed is inappropriate. *Id.* at 1137-38.

[30] The *Harris 2* court determined the nature of the offense was troubling, noting that Harris planned the armed robbery in advance. Another negative circumstance is that Harris shot the victim, instead of being a mere accomplice or conspirator. *Cf. Brown v. State*, 10 N.E.3d 1, 5 (Ind. 2014) (maximum sentences for robbery and two counts of murder was inappropriate; among other factors, Brown was accomplice rather than shooter). As for the character of the offender, the *Harris 2* court further determined Harris' age was not grounds for sentence reduction, echoing the trial court's determination that Harris was old enough to understand the seriousness of the offense of murder and to conform with the requirements of the law.

[31] Harris cites *Lewis v. State*, 759 N.E.2d 1077 (Ind. Ct. App. 2001), *trans. denied*, in support of his claim, but that case is distinguishable. Lewis was convicted of confinement and battery, for which he received maximum, concurrent sentences. A panel of this Court determined several aggravating factors found by the trial court were inappropriate. Next, applying a prior version of Appellate Rule 7(B), the Court considered the remaining aggravating factors, determined Lewis' sentence was manifestly unreasonable, and remanded for resentencing. In support of its determination, the Court concluded it could not

say the trial court "would necessarily weigh" the proper factors the same way, once the improper factors had been removed. *Id.* at 1087.

[32] The *Harris 2* court, unlike the *Lewis* court, had the benefit of the trial court's reconsideration of aggravating and mitigating factors on resentencing. We conclude Harris has failed to demonstrate a reasonable probability that the *Harris 2* court's analysis would have changed if Harris's trial counsel had presented evidence relevant to the three additional claimed mitigating circumstances. As a result, he has not demonstrated that the evidence, as a whole, leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court.

# Conclusion

[33] For the reasons stated above, we affirm the judgment of the post-conviction court.

[34] Affirmed.

Vaidik, C.J., and Riley, J., concur.